## PIPER *vs.* MANNY.

An *innkeeper* is responsible for the safe-keeping of a load of goods belonging to a traveller who stops at his *inn* for the night, if the carriage containing the goods be deposited in *a place designated by the servant of the innkeeper*, although such place be *an open unenclosed space* near the public highway.

ERROR from the Montgomery common pleas. This was *an action on the case* brought in a justice's court by Piper

against Manny as an *innkeeper*, for the loss of a quantity of butter. The servant of the plaintiff put up for the night at the house of the defendant ; he had a sleigh load of butter, and inquired of the *hostler* if there was a *barn* in which the load could be placed, who answered that it was as safe in the yard as under lock and key. The yard was *an open unenclosed space*, within 16 or 18 yards of the centre of the travelled part of the highway, on the opposite of the highway from where the defendant's house was situate. The load was placed near an open shed, where the *hostler* directed it should be placed. The defendant was told in the evening that there was butter in the load. In the morning a *tub of butter* was missing. The cause was tried in the justice's court by a jury, who found a verdict for the plaintiff for $24 50. The common pleas of Montgomery, on a *certiorari* sued out by the defendant, *reversed* the justice's judgment, assigning as a reason for their judgment that the defendant was not liable as an *innkeeper* for the lost butter, because the butter was not brought *within the inn*, nor was it *received into Manny's possession or keeping*, but was left by Piper's agent in the highway ; and because Manny or his servant was *not guilty of any negligence* that would render him liable for the butter. The plaintiff sued out a writ of error.

*E. S. Capron*, for plaintiff.

*D. Wright*, for defendant,

*By the Court*, NELSON, Ch. J. The only question in the case is, whether the goods were received into the care and keeping of the *innkeeper*, within the meaning of the terms of his common law liability ; that is, *infra hospitium*. If they were, the question of *negligence* of the defendant or his servants has nothing to do with the case. 5 T. R. 275, Buller, J. The goods need not be within the building strictly denominated the inn, it being well settled that the barns and stables come within the definition. *Calye's case*, 8 Rep. 63. *Clute* v. *Wiggins*, 14 Johns. R. 175. *Mason* v. *Thompson*, 9 Pick. 280. In *Clute* v. *Wiggins*, the load of grain

was put into the waggon-house ; and in *Mason* v. *Thompson,* the chaise and harness under an open shed, as in the present case, except the yard was enclosed with a fence. So it has been held that a horse of the guest, put into a pasture lot, if without his special direction, is *infra hospitium,* within the meaning of the original writ, which Lord Coke says is the foundation of the common law liability. *Calye's case.* The *place,* therefore, where the goods are deposited, is not the test ; it is whether they are *in the custody of the innkeeper,* or *at the risk of the guest.* This must necessarily depend upon the particular circumstances of each case. *Prima facie* the innkeeper is liable, and the *onus* lies on him to show the contrary. 5 T. R. 273. 4 Maul. & Sel. 306. 8 Barn. & Cres. 9. And he cannot discharge himself from this common law liability without the concurrence of the guest. Id. 7 Carr. & Payne, 213. *Calye's case.* 3 Bac. Abr. 664. Testing the case before us upon these principles, it appears to me there cannot be a doubt of the defendant's liability.

The load was left in the place directed by the defendant's servant, after an assurance it would be as safe there as if under lock and key, and this made on an intimation that the goods would be exposed. The traveller is not obliged to give special instructions in this respect ; on the contrary, if the innkeeper wishes to exonerate himself, unless the goods are deposited in a particular place, or kept in a special manner, he must say so. *Calye's case.* 4 Maule & Sel. 306. 8 Barn. & Cres. 9. The last case is very strong on this point. There it was the custom to take the luggage of travellers to their bed rooms, unless contrary orders were given. One package, containing silks of various kinds, was taken by direction of the guest to the commercial room. On the next day he took it out to exhibit his goods to different customers ; some were sold, and the package was taken back to the commercial room, from which it was afterwards stolen. It was insisted that by the special direction given, which tended to expose the goods in a greater degree than if the usual practice had been observed, the guest had exonerated the innkeeper within the case of *Burgess* v. *Clement,*

4 .Maule & Selw. 306. But the court answered this by saying, that if it had been intended by the defendant not to be responsible unless the goods were placed in the bed room or other place of security, he should have said so.

The liability of the *innkeeper* is strict, and, doubtless, often severe, but not more so than that of the *common carrier;* both are considered *insurers* of the goods while in their keeping. As an equivalent they have peculiar privileges; the former of these also by special license. But whatever may be thought of the principles of their responsiblity, it is not for the court to innovate upon them: we must apply them as they have been applied by our predecessors, until otherwise directed by the competent authority. I am satisfied such application subjects the defendant in this case to liablity.

Judgment reversed.