THICKSTUN *v.* HOWARD.

THICKSTUN
*v.*
HOWARD.

Case. The facts were as follows: The defendant, who was an innkeeper, had taken the plaintiff's horse to keep a few days before the accident happened which occasioned the suit. The plaintiff rode out the horse one evening, and, on returning to the stable, tied him in the stall where he had been previously kept. The next morning, the horse was found dead in the same stall with his head fast in the trough. The trough was made of a hollow beach log, having a bulge in the middle which rendered that part of the trough wider than it was at the top. The horse had got his head fast in the trough by the jaws, and, as the witnesses supposed, had killed himself in the attempt to draw it out. *Held,* that the plaintiff was not entitled to recover.

ERROR to the *Sullivan* Circuit Court.

SMITH, J.—Action on the case. The declaration avers that on the 20th of *November*, 1844, at said county of *Sullivan*, the defendant was a common innkeeper and that the plaintiff was lodged in the inn of the defendant; that the plaintiff was then and there possessed of a certain gray horse of the value of 40 dollars, which said horse was delivered to the said defendant to be kept for hire; and that said horse, for want of safe-keeping and by reason of the negligence of the said defendant, was killed at the defendant's inn; wherefore the plaintiff had sustained damage, &c. The trial in the Circuit Court resulted in a verdict for the defendant. There. was a motion for a new trial which was overruled, and judgment was rendered upon the verdict.

The plaintiff insists that he was entitled to a verdict upon the evidence, and that the Court erred in refusing to give instructions which he requested to be given, and in giving other instructions to the jury which were improper.

The testimony set out in a bill of exceptions discloses the following facts: The defendant, who was an innkeeper, had taken the plaintiff's horse to keep a few days before the accident happened, which was the occasion of the suit. The evening before the horse was killed, the plaintiff had rode him out, and on returning to the stable had tied the halter himself in the stall where the horse had been previously kept. The next morning the horse was found dead in the same stall with his head fast in the trough. The trough was made of a hollow beach log, having a bulge in the middle which rendered that part of the trough wider than it was at the top. The

Nov. Term, 1847.

THICKSTUN
v.
HOWARD.

horse had got his head fast in the trough by the jaws, and, as it was supposed by the witnesses, had killed himself in the attempt to draw it out.

The Court instructed the jury, in substance, that to entitle the plaintiff to recover in this action, he must prove that he was a traveller or guest at the defendant's inn; and that if the plaintiff lived in the same town where the inn was situated, and had placed his horse in charge of the defendant to keep for hire, such undertaking by the defendant did not of itself create the relation of landlord and guest between the parties.

The instructions asked for by the plaintiff and refused were to the effect, that if the defendant was an innkeeper, and the plaintiff had left his horse with the defendant to be kept for an indefinite period, with the understanding that such keeping was to be paid for, though the plaintiff lodged elsewhere, the rights and liabilities of innkeeper and guest were created between the plaintiff and defendant.

Innkeepers are answerable for the safe-keeping of the goods of all persons who come to their inns as guests. In *Hill* v. *Owen*, 5 Blackf. 323, it is remarked that there is not an entire unity of opinion among legal writers, as to whether innkeepers are responsible to the same extent as common carriers. Some cases are cited in the books, where a distinction is taken between the accountability of innkeepers and common carriers, as when a loss has been occasioned by robbery and burglary by persons from without the inn, or by an armed mob, not being public enemies. Story on Bailm. § 472. Nevertheless, the rule of law is nearly or quite as rigid in the one case as in the other, although there may be some difference in the cases excepted from its operation. By the *Roman* law, an innkeeper was accountable for the value of property intrusted to his charge, though the loss occurred or the thing perished without his fault, unless it happened *damno fatali* or by the act of God. Under the term *damnum fatale*, the civilians included all those accidents which are summed up in the common law expressions " act of God," or " public enemies," though perhaps it embraced some which would not now be admitted as occurring from an irresistible force. The principle was early adopted and engrafted upon the common law, and has *been*

recognised to its full extent by the Courts of justice in this country. 2 Kent's Comm. 594. Innkeepers as well as common carriers are regarded as insurers of the goods of their guests, while in their keeping, and are bound to make restitution for any injury or loss not occasioned by the act of God, the common enemy, or by the negligence or fault of the guest. 2 Dane's Abr. 51.—8 Co. R. 32.—5 T. R. 273.—3 Dyer, 266.—8 B. & C. 9.—1 Yeates, 34.—21 Wend. 282.

Nov. Term, 1847.

THICKSTUN v. HOWARD.

But it is not for all deposits of goods without discrimination, that innkeepers are held to this strict accountability. In fact, the strictness of the rule has always been based upon the necessity of travellers and wayfarers being obliged to confide in the honesty of those who keep houses of accommodation for strangers. It is intended to protect such strangers against the negligence and also the dishonest practices of the innkeeper and his servants. This necessity does not exist when the relation of innkeeper and guest does not, or when the owner of the property is not a traveller or a stranger, but one who merely places his property in charge of the innkeeper without becoming a guest himself, and without any intention to do so. Accordingly, distinctions were taken at a very early period, limiting the right to maintain an action of this character to those persons for whose benefit and security the rule was adopted. Thus, in *Calye's* case, 8 Co. R. 32, it was resolved that to maintain an action against an innkeeper for goods lost, the plaintiff ought to be a traveller, and that a neighbour or one of the same town could not. However, in *Thompson* v. *Lacy*, 3 Barn. & Ald. 283, in which the subject was fully discussed, it was held that such an action was maintainable, even though the guest did not appear to have been a traveller, but to have resided previously in furnished lodgings in the same city. The case of *Mason* v. *Thompson*, 9 Pick. 280, goes perhaps the furthest of all the reported cases, in extending the liability of the innkeeper to cases where the relationship of innkeeper and guest can only be raised by construction. In that case one *Lydia Giles*, who had hired the horse of the plaintiff, drove the same to *Boston* to the house of one *Abrams*, where she remained as a visiter, and sent the horse to the stable of the defendant, who was an innkeeper, to be kept during her visit. At the end of

four days when *Lydia Giles* sent for the horse, the harness could not be found and was supposed to have been stolen. It was urged that neither the plaintiff nor his servant was the defendant's guest, as neither of them had diet or lodging at the inn. But it was held on the authority of *Yorke* v. *Grenaugh*, 2 Ld. Raym. 866, that the plaintiff could recover; and that it was not essential that he should have been a lodger, or have had any refreshment at the inn. This case is quoted with disapprobation in *Grinnell* v. *Cook*, 3 Hill's R. 485, in which it is held that one who has neither been at the inn nor intends going there, though he send his goods to be taken care of by the innkeeper, cannot be regarded as a guest; and that an innkeeper who receives the horses of a neighbour for the purpose of feeding and keeping them, is not subject to the rule of strict accountability adopted when the relationship of innkeeper and guest exists.

The doctrine maintained in the case last quoted appears to be more reasonable than that held in *Mason* v. *Thompson*. It is said in 8 Co. R. 32, that inns were allowed for the benefit of travellers, who have certain privileges whilst they are in their journeys, and are in a more peculiar manner protected by the law. These privileges were, undoubtedly, intended for those who should stop at such inns to partake of the accommodations they professed to afford. In such accommodations, are included shelter and houseroom by day or night, with diet, lodging, and other requirements of a temporary sojourner. These accommodations are for the public, and the innkeeper cannot refuse to receive any traveller or guest who applies for entrance in a proper manner, and who comes in a situation fit to be received. Such guest or traveller may be a neighbour or a resident of the same town, and possibly may not require either diet or lodging. If one upon a journey should stop while his horse was being fed at the inn, undoubtedly the innkeeper may charge a reasonable compensation as well for the mere shelter of the traveller as for the food consumed by the horse, and the former might be a guest in the legal acceptation of that term. In many cases, it might be a question for the jury to determine from the facts whether the relationship of innkeeper and guest existed or not, but we apprehend that such relationship must be raised in some way,

before the innkeeper can be held liable in his capacity as such. But as inns are established for the personal accommodation of travellers, or those in want of temporary shelter or house-room, the privileges with which the law invests such persons must be regarded as incident to their personal presence. The custody of the goods which they carry with them is a secondary matter, and "is part and parcel of the contract to feed, lodge, and accommodate the guest for a suitable reward." 2 Kent's Comm. 592. The law imposes this part of the contract upon the innkeeper from considerations of public policy, but it is only *a part* of the contract, and for that reason, if no other existed, we should be obliged to conclude that the mere custody of property belonging either to a resident of the same town or vicinity in which the inn is situated, or to one who may not be such resident, is not sufficient of itself to create by implication of law the entire contract which is held to subsist between an innkeeper and guest.

From this view of the law, we conclude there is no error in the record under consideration. The plaintiff appears to ground his right to a recovery entirely upon that peculiar responsibility which the law imposes upon innkeepers; and as the evidence amounts to this only, that the defendant was an innkeeper and the horse was accidentally killed while in his keeping, without showing a want of ordinary care upon the part of the defendant or that the plaintiff was a guest at the inn, the Circuit Court gave proper instructions to the jury, and the verdict was in accordance with the law applicable to the facts of the case (1).

*Per Curiam.*—The judgment is affirmed with costs.

*J. S. Watts*, for the plaintiff.

*J. H. Henry*, for the defendant.

---

(1) The following is a late case in the Queen's Bench relative to the liability of innkeepers:

Case against an innkeeper by his guest for an injury to the plaintiff's horse. On the trial, it appeared that the defendant was the innkeeper of a certain inn, to which the plaintiff's servant brought the horse of plaintiff on a market day. The plaintiff gave the horse in charge to the defendant's hostler, who placed him in a stall where there was another horse: and the injury was done by the other horse kicking the horse of the plaintiff. On this evidence, the defendant moved for a nonsuit on the ground of the want of proof of negligence, but the motion was overruled. He then called witnesses to show that proper care had

*Margin note:* Nov. Term, 1847.

THICKSTUN
v.
HOWARD.

Nov. Term,    been taken of the horse.  *Held*, that proof by the defendant of such attention
1847.         and skilful management as to convince the jury that the damage could not have
              been occasioned by the negligence imputed, took away the ground of action.
HARKER       *Dawson* v. *Chamney*, 5 Adol. & Ell. N. S. 164.
v.
THE STATE.