CHITTENDEN MERRITT *v.* HORACE CLAGHORN.

*Liability of innkeepers.*

An action cannot be sustained against a common innkeeper, by a guest, to recover for property lost by fire, which was occasioned by inevitable casualty, or superior force, and without any negligence on the part of the innkeeper, or his servants.

TRESPASS ON THE CASE.   The plaintiff declared against the defendant, as follows :—

For that whereas, by the law and custom of this state, innkeepers, who keep common inns for the reception, lodging, and entertainment of travellers and guests putting up at and abiding in the same, are bound to keep the goods and chattels, brought by such travellers into and being within their respective inns, safely and without any diminution or loss; and whereas the said defendant, before and at the time of the loss hereinafter next mentioned, was and from thence hitherto hath been and still is an innkeeper, and as such innkeeper the said defendant hath, during all that time, kept and still doth keep a certain common inn for the reception, lodging and entertainment of travellers, that is to say, a certain inn at said Castleton, to wit, at said Burlington; and whereas also, the said defendant so being such innkeeper, and so keeping said inn, as aforesaid, one Andrew Roe, the servant of the said plaintiff, heretofore, to wit, on the first day of January, A. D. 1850, at said Castleton, to wit, at said Burlington, he the said Andrew then and still being the servant of the plaintiff, put up at and was then and there received into the said inn, as a traveller and guest, by the said defendant, and then and there brought into the said inn two certain mares, one double harness, two horse blankets and two halters, of the said plaintiff, of

XXIII.      23

Merritt *v.* Claghorn.

great value, to wit, of the value of four hundred dollars, and which said mares, harness, blankets and halters were then and from thence until and at the time of the loss hereinafter mentioned within the said inn, and the said Andrew, then and still being the servant of the said plaintiff, as aforesaid, during all that time abided as a traveller and guest therein, to wit, at said Burlington ; yet the said defendant, so being such innkeeper, as aforesaid, not regarding his duty as such innkeeeper, did not keep the said mares, harness, blankets and halters, so brought into and so being in the said inn, as aforesaid, safely and without diminution, or loss, but, on the contrary thereof, the said defendant and his servants so negligently and carelessly behaved and conducted themselves in that behalf, that afterwards, and while the said Andrew, then and still being the servant of the plaintiff, as aforesaid, so abided in the said inn, as aforesaid, to wit, on the same day and year last aforesaid, the said mares, harness, blankets and halters were, by and through the carelessness, negligence and default of the said defendant and his servants in that behalf wrongfully and unjustly burned and destroyed by a fire, which then and there broke out within said inn, and was caused by some person or persons to the said Andrew and the plaintiff as yet unknown, and were and still are thereby wholly lost to the said plaintiff, to wit, at said Burlington.

Also in a farther plea of the case, for that whereas by the law and custom of this state innkeepers, who keep common inns for the reception, lodging and entertainment of travellers and guests putting up at and abiding in the same, are bound to keep the goods and chattels, brought by such travellers and guests into and being within their respective inns, safely and without any diminution, or loss; and whereas the said defendant, before and at the time of the loss hereinafter next mentioned, was and from thence hitherto hath been and still is an innkeeper, and as such innkeeper the defendant hath, during all that time, kept and still doth keep a certain common inn for the reception, lodging and entertainment of travellers and guests, that is to say, an inn at said Castleton, to wit, at said Burlington ; and whereas, also, the said defendant so being such innkeeper, and so keeping said inn, as aforesaid, one Andrew Roe, on the second day of January, A. D. 1850, at said Castleton, to wit, at said Burlington, he the said Andrew then and still being the servant and agent of the plaintiff, put up at and was then and there received into the said inn, as a traveller and guest, by the said defendant, and then and there brought into the said inn two certain other mares, one double harness, two horse blankets and two halters, of the said plaintiff, of great value, to wit, of the value of four hundred dollars, and put up the same at and in the said inn, and left the same in the said inn, for the said mares to be therein stabled, fed and baited and duly taken care of, and for the said harness, blankets and halter also to be therein duly taken care of by the defendant, as such innkeeper,

Merritt *v.* Claghorn.

for reasonable gain, hire and reward to be paid by the said Andrew to said defendant, and the defendant, as such innkeeper, as aforesaid, then and there received the said mares, harness, blankets and halters into the said inn for the purpose and on the occasion aforesaid, which said mares, harness, blankets, and halters were then and from thence until and at the time of the loss hereinafter mentioned within the said inn for the purpose aforesaid, and the said Andrew, then and there during all that time and still being the servant of the said plaintiff, as aforesaid, during all that time abided as a traveller and guest therein, to wit, at said Burlington; yet the said defendant, so being such innkeeper, as aforesaid, not regarding his duty as such innkeeper, did not keep and take care of the said mares, harness, blankets and halter, so brought into and so being in said inn, as aforesaid, safely and without diminution or loss, but on the contrary thereof the said defendant and his servants so negligently and carelessly behaved and conducted themselves in that behalf, that afterwards, and while the said Andrew, then and still being the servant and agent of the plaintiff, as aforesaid, so abided in the said inn, as aforesaid, to wit, on the day and year last aforesaid, the said mares, harness, blankets, and halters were, by and through the carelessness, negligence and default of the said defendant and his servants in that behalf, wrongfully and unjustly burned and destroyed by a fire, which took place and broke out within said inn and was caused by some person or persons to the said Andrew and the plaintiff unknown, and were and still are thereby wholly lost to the said plaintiff, to wit, at said Burlington.

There was also a count in trover. Plea, the general issue, and trial by jury, September Term, 1850,—BENNETT, J., presiding.

On trial, it was conceded, that the defendant was the keeper of an inn at Castleton, and that, in January, 1850, the agent of the plaintiff was received as a guest at the defendant's inn, with the property described in the declaration, belonging to the plaintiff; and that the horses and other property were, as is usual in such cases, put into the barn of the defendant, which was a part of the premises, and, at the usual time for closing the stable, the barn was locked by the defendant; and that about day light the next morning, and while the property was thus in the custody of the defendant, as an inn keeper, the barn was discovered to be on fire, supposed to be the work of an incendiary, and the horses and other property were burned and destroyed; and that there was no negligence, in point of fact, in the defendant, or his servants, in the care of the barn and of the property in question. Testimony was given to the jury in regard to the value of the property destroyed, and, under the direction

of the court, they assessed the plaintiff's damages at $166,66, subject to the opinion of the court as to the plaintiff's right to recover any damages, upon the facts agreed. The court, upon motion, set aside the verdict, and rendered judgment for the defendant. Exceptions by plaintiff.

*S. Wires* and *W. W. Peck* for plaintiff.

If the defendant be liable, it is because, as an inn keeper, he was an insurer of the goods. His liability is equal to that of a common carrier.

The grounds of liability, which exist in the case of the latter, exist equally in that of the former, and their liabilities should be alike. The relations, which they hold to the property, are essentially the same. The only difference is, that one has the care of *property in transit*, the other the care of property *in deposit*. Their duties are imposed upon each by law; each is a public servant; each is liable to indictment at common law,—the one, if he refuse to carry,—the other, if he refuse to keep and entertain; and each can take but a reasonable reward. Bac. Abr., Tit. Inns & Innkeepers, C. *Jones* v. *Cotton*, 1 Salk. 18. *York* v. *Grindstone*, Yelv. 385. The writs, in the case of an innkeeper and a carrier, when they are sued, as such, for a loss, are the same. *Morse* v. *Slue*, 1 Ventr. 190. *Calye's Case*, 8 Co. 32 *a.* Reg. Brev. 104, 105. The authorities fully sustain the theory of the writ. In none of them is the liability of the innkeeper treated as less than that of the carrier, and in many of them he is made liable for losses, irrespective of the care, which he may have exercised. *White's Case*, 2 Dyer 158 *b.* *Sanders* v. *Spencer*, 3 Dy. 266 *b.* *Calye's Case*, 8 Co. 32 *a.* *Cross* v. *Andrews*, Cro. El. 622. *Mason* v. *Grafton*, Hob. 245. *Gilley* v. *Clark*, Cro. Jac. 188. *Beedle* v. *Morris*, Ib. 224. *S. C.*, Yelv. 162 *a.* *Warbrook* v. *Griffin*, 2 Brownl. 255. 1 Plowd. 9, 129. Doct. & Stud. 237, c. 42. *Richmond* v. *Smith*, 8 B. & C. 9. *Kent* v. *Shuckard*, 2 B. & Ad. 803. Noy's Max. 92, 93. 1 Com. Dig. 411, 415. 1 Bl. Com. 430. Bul. N. P. 73. *Mason* v. *Thompson*, 9 Pick. 280. *Clute* v. *Wiggins*, 14 Johns. 175. *Hollenbeche* v. *Fisk*, 8 Wend. 547. *Piper* v. *Manny*, 21 Wend. 283. *Grinnell* v. *Cook*, 3 Hill 486. *Wells* v. *Steam Nav. Co.*, 2 Coms. 209. 4 Kent (6th Ed.) 591, 595. The case of *Dawson* v. *Chamney*, 5 Ad. & El.,

Merritt *v.* Claghorn.

N. S., is not an opposing decision. The proximate cause of loss, in that case, was the act of God,—if that expression includes all causes of loss not attributable to human agency. Hence the innkeeper could be liable only in case that cause operated or was not prevented through his want of care. The case would involve only the question of his negligence. In his work on bailments, Story holds, that the innkeeper is liable to the highest degree of care, but is not an *insurer.* The authorities, which he cites, do not sustain him, and the rule, which he lays down, is impracticable.

*D. A. Smalley* for defendant.

Under the circumstances stated in the case, it is well settled, both upon principle and authority, that the innkeeper is not liable for the loss,—certainly not by fire. *Calye's Case,* 8 Co. 32 *a.* Jones on Bail. 107–111. Story on Bail. §§ 482, 483. Chit. on Cont. 476. Story on Cont. § 457. *Burgess* v. *Clements,* 4 M. & S. 306. 2 Kent (5th Ed.) 592. *Dawson* v. *Chamney,* 48 E. C. L.|64. Although *prima facie* the innkeeper may be liable for a loss, no adjudged case can be found, where he has been held liable for a loss, which was proved, or admitted, to have happened without negligence, or fault, on the part of the innkeeper, or of one for whom he was responsible. The *obiter dictum* of the judge in *Mason* v. *Thompson,* 9 Pick. 280, is not called for or sustained by the case. See, also, *Richmond* v. *Smith,* 15 E. C. L. 144.

The opinion of the court was delivered by

REDFIELD, J. This is an action against the defendant, as a common innkeeper, for the loss of the plaintiff's team, while a guest at the defendant's house, by the burning of his barn, supposed to be the work of an incendiary.

The case finds, that the plaintiff's loss was, without " any negligence, in point of fact, in the defendant, or his servants." From this we are to understand, that no degree of diligence, on his part, could have prevented the loss. If, then, the defendant is liable, it must be for a loss happening by a cause beyond his control. In saying this, we have reference only to the highest degree of what would be esteemed reasonable diligence, under the circumstances known to exist, before the fire occurred. We are aware, that it would

Merritt *v.* Claghorn.

doubtless have been possible, by human means, to have so vigilantly guarded these buildings, as probably to have prevented the fire. But such extreme caution, in remote country towns, is not expected, and if practised, as a general thing, must very considerably increase charges upon guests, which they would not wish to incur, ordinarily, for the remote and possible advantage which might accrue to them.

The question, then, is, Whether the defendant is liable? Do the authorities justify any such conclusion? For it is a question of authority mainly. We know that many eminent judges and writers upon the law have considered, that innkeepers are liable to the same extent as common carriers. It may be true, that the cases are much alike in principle. For one, I should not be inclined to question that. But if the case were new, it is certainly not free from question, how far any court would feel justified in holding any bailee liable for a loss like the present. But in regard to common carriers, the law is perfectly well settled, and they contract, with the full knowledge of the extent of their liability, and demand, not only pay for the freight, but a premium for the insurance, and may reinsure, if they choose. And the fact, that carriers are thus liable, no doubt often induces the owners to omit insurance. But unless the law has already affixed the same degree of extreme liability to the case of innkeepers, we know of no grounds of policy merely, which would justify a court in so holding.

In regard to the authorities relied upon by the counsel for the plaintiff, the case of *Bedlo* v. *Morris*, Yelv. 162, decided as early as 7 *Jac.* 1, makes nothing either way upon this point. The declaration only claims, that the defendant is liable for " goods lost, through the default of the defendant, or his servants ;" and no case questions the liability to this extent. The *dictum* referred to in argument, in the Doctor and Student, only shows, that innholders are liable for a robbery, committed upon their guests by the servants of the house. But this is upon the ground of want of proper care in keeping such servants. The host is, we apprehend, upon principles of reason and justice, always liable for any act of his servants, or guests. He employs such servants as he chooses, and is bound to take every quiet and orderly guest which offers, and if he takes others, even in good faith, it ought not to be at the risk of his other guests, who derive no profit and have no concern whatever in their being there. In holding

the innkeeper liable to this extent, all opinions concur. It is here the discrepancy begins.

*Morse* v. *Slue*, 1 Vent. 190, decides nothing, for the case was compounded. But the case was one of common carrier, by ship, as early as the 24 *Car.* 2, and doubts seem then to have existed, whether even common carriers were liable, without any default; but the law is clearly against them now upon that point. The declaration in this case seems to be much the same in substance as that in Yelverton, which is a ground of argument; perhaps the extent of the liability was then considered the same, which we should also infer from other parts of the case.

*Calye's Case,* 8 Coke 32 *a,* which is regarded as the leading case upon this subject among the early reports, certainly decides nothing more, than that the host is not liable for the horse of his guest, if put in the pasture by direction of the owner, and there stolen, which he probably would be, if put in the barn, for it would then be the folly and neglect of the hostler, not to lock the barn. The numerous *dicta* in this case, as in most of the cases in my Lord Coke's Reports, go far beyond the case, and embody the leading principles of a brief treatise upon the subject. And these *dicta* have been regarded as authority, to some extent. But even that will not justify the present action. "There ought to be a default in the innholder or his servants," [or may we not add guests?] But in the present case, there is no pretence of any such default.

*White's Case,* 2 Dyer 158 *b,* is where the house was full, and the guest undertook to shift for himself, being admitted as matter of favor, and upon that condition, and the innkeeper was held not liable, even for robbery committed in the house, which he *prima facie* clearly would be in ordinary cases, and ultimately, unless he could show that no degree of diligence, on his part, which ⬛⬛⬛⬛ reasonable to require, could have prevented the robbery. The case of *Saunders* v. *Spencer,* 3 Dyer 266, decides, that goods, which the guest declines to have locked up in a place pointed out to him, are at his own risk.

It is certain, that Sir William Jones, in his treatise upon the liabilities of bailees, lays down no such extreme liability, on the part of innholders, as is here claimed. He is liable, says this writer, if the goods of a guest be stolen from his premises "by any person what-

Merritt *v.* Claghorn.

ever." And he is liable for robbery, even, if committed by his servants or guests, but not if he take ordinary care, or the force were truly irresistible. This is the import of the rule laid down by Sir William Jones, and Mr. Justice Story adopts almost precisely the same view, in his valuable treatise upon bailments. The innkeeper is bound to the extremest degree of diligence, which any prudent man would be expected to resort to in defending his own goods, and is absolutely responsible for loss by his own servants or guests, and, *prima facie,* for all losses.

Chancellor Kent, 2 Kent 592, lays down much the same rule. He says, the liability does not extend to loss occasioned by inevitable casualty, or by superior force, as robbery. A more extreme case of superior force than the present is scarcely supposable, or one more clearly within the reason of the rule, requiring extreme strictness in the care and responsibility of innholders.

The American cases referred to in argument certainly do not decide what is necessary to maintain this action. *Mason* v. *Thompson,* 9 Pick. 280, involved no question of difficulty, except whether the defendant was liable at all, as a common innholder. The goods, being the plaintiff's harness, were confessedly lost, and nothing appeared, but that they were lost by the neglect of the defendant's servants. As a common innholder, this imposed the burden upon him to show that the loss occurred without his fault. This he did not attempt. It being settled, that, under the circumstances, the defendant was liable as a common innholder, although the plaintiff was not at the time a lodger in the plaintiff's house, there remained no farther doubt in the case.

So, too, in *Piper* v. *Manny,* 21 Wend. 282, the goods were stolen from the plaintiff's load, which was left in the open yard of the inn by direction defendant's servants, and the defendant was held liable upon the most obvious principles of the law applicable to the subject. It is true, in both these cases, the opinion is broadly declared, that the liability of an innholder and a common carrier is the same. But the cases called for no such opinion, and no authority is cited for the opinion, and it is by no means certain, that those judges would have so held, if it had been necessary to turn the case upon that naked question. No authority whatever is cited in the former case except by the reporter, who refers to *Richmond* v. *Smith,* 9 B.

Merritt *v.* Claghorn.

& C. 9, and that was only the case of goods stolen from the inn, and it was held, the innkeeper was *prima facie* liable. And the judges here say, that " in this respect [that is, where goods are stolen] the situation of the landlord is precisely similar to that of a carrier."

But we find, that, when the very question comes before the English courts, as it did in *Dawson v. Chamney*, 5 Ad. & Ellis, N. S. 164, [48 E. C. L. 164,] for the first time, so far as I can find, it was found necessary to put very essential qualifications upon the language of the judges, as reported in the last case referred to. The doctrine of this case, as expressed in the note, is, " When chattels have been deposited in a public inn, and there lost or injured, the *prima facie* presumption is, that the loss or damage was occasioned by the negligence of the innkeeper or his servants. But this presumption may be rebutted; and if the jury find in favor of the innkeeper, as to negligence, he is entitled to succeed on a plea of not guilty."

This rule, it is there shown very clearly, is founded upon the ancient common law liability of innkeepers, as set forth in the writ, taken from the *Registrum Brevium*, and found also in Fitzherbert's N. B., 94 B. Of the guests, it is said there, their " goods being in those inns, without subtraction to keep night and day, are bound, so that for default of them, the innkeepers or their servants, damage may not come in any manner to such guests."

It is, perhaps, scarcely necessary to pursue this subject farther. It is certain, no well considered case has held the innkeeper liable in circumstances like the present. And no principle of reason, or policy, or justice, requires, we think, any such result, and the English law is certainly settled otherwise. We entertain no doubt, therefore, that the defendant is fairly entitled to have the judgment, which he obtained in the court below, affirmed.

Judgment affirmed.