Harris, J.,
delivered tbe opinion of tbe Court.
Tbe defendant in error brought this suit before a justice of the peace, to recover tbe value of a sack of flour, which was lost at tbe mill of the plaintiff in error. Tbe justice gave judgment for tbe plaintiff: the defendant appealed to tbe Circuit Court, where tbe plaintiff again recovered. A new trial was refused, and tbe defendant prosecutes a writ of error to this Court.
Tbe bill of exceptions shows that tbe plaintiff introduced as a witness E. Kirk, who testified that “ be was at *366 defendant’s mill when the plaintiff’s negro boy came to the mill with a load of grain; the negro brought the bags of grain into the mill; that a bag of the plaintiffs wheat, containing about two and one-half bushels, was ground and the flour put up, and the negro set the bag aside with the bags of witness, apart from the other bags in the mill. When the boy got ready to leave, said bag of flour was gone, and when witness left, it had not been found; that he saw no want of care and attention in relation to said bag of flour on the part of the miller.” The value of the wheat and bag was proved, and that defendant was a public miller, who ground for toll.
The Court charged the jury “that if the plaintiffs wheat was carried to the defendant’s mill to be ground, the defendant was bound to return it, and would be liable to pay for it if it was lost by theft, unless such theft was committed by overpowering force; that a miller is bound to use extraordinary diligence in preserving the grain sent to his mill from loss.” It is insisted for the plaintiff in error that this charge is erroneous: that a public miller is only bound to use ordinary diligence.
The general rule is, that where the bailment was for the mutual benefit of both parties, then the bailee is only bound to ordinary diligence — “ such as a person of ordinary care and prudence takes of his own concerns.” But it by no means follows that in every case where the bailment is for the mutual benefit of both parties, the bailee is only bound to ordinary care. There are several exceptions to this rule. In the case of inn-keepers and common carriers, it is manifest that the bailment is for the mutual benefit of both parties; but a very different principle prevails as to their liabilities. “ Public policy imposes upon an inn *367 keeper a very severe liability.” “ The prevailing authorities make him an insurer of the property committed to his care against every thing hut the act of Grod, or the public enemy, or the neglect or fraud of the owner of the property.” See 1 Parsons on Con., 624; 2 Kent’s Com., 459; 9 Pick., 280; 8th B. & C., 9; 21 Wend., 282; 3 Hill, 485; 9 Humph., 746. This rule is equally stringent as to common carriers. See 1 Parsons on Con., 634 ; 2 Kent’s Com., 464.
This policy is founded on the principle of public utility, to which all private considerations must yield. Travellers are bound to rely almost implicitly on the good faith of inn-keepers. Most of the commerce of the country, from necessity, is carried to market by common carriers. And it would be almost impossible, in any given case, for the owner of property committed to their care, to make out proof of fraud or negligence in the landlord or common carrier. The law, therefore, from motives of public policy, presumes against them, unless they can show that the injury resulted from the act of Grod or the public enemy.
Were it not for this rule, inn-keepers and common carriers might contrive, by means not to be detected, to commit breaches of trust, or be robbed of the goods committed to their care, in order to share the spoil. See 2 Kent’s Com., 460. This stringent rule was applied by his Honor the Circuit Judge to the case before us. And it is difficult to perceive, upon reason and sound policy, why it is not correct. Almost the entire breadstuffs consumed in this country are manufactured by public millers, and the owners of grain are as much bound to rely implicitly on their good faith as are the owners of goods committed to the care of inn-keepers and common carriers. The *368 small amount involved in tbis case makes it a matter of but little consequence, but tbe principle involved is one of practical importance.
Not only are our breadstuffs manufactured by public millers, but many of our smaller planters have their entire cotton crops prepared for market at public gins, which must, as we think, be governed by the same principles. The difficulty is in determining to what class of bailments the case belongs, and the degree of care required of public millers. We think, however, that the authorities place the case within a class where the rule is a little less stringent than that adopted by his Honor.
Under the head of “Locatio Opens Faeiendi,” is embraced that class of bailments “where mechanics are employed to make up materials furnished, or to alter or repair a specific thing.” It is true it is said that “the contract is one of mutual benefit, and only ordinary care is required.” But it is also said that “this care may vary much in different cases,” according to the “nature of the thing and the circumstances.” 1 Parsons on Con., 610, 603. “ The obligations of workmen are, to do the work in a proper manner, to employ the materials furnished in the right way, and not only to guard against all ordinary hazards, but to use their best endeavors to protect the thing delivered to them against all peril or injury.” But “if it perishes in their hands, without their fault, then the owner loses the property.” Ibid, 611. “ If the loss occur through theft or robbery, or the injury result from violence, the bailee is only answerable when his imprudence or negligence caused or facilitated the injurious act.” Ibid, 606.
While we admit that reason and public policy would *369 well warrant the holding of public millers to the same stringent liability that inn-keepers and common carriers, are held to, yet we think that the authorities place them in the class with “ mechanics who are employed to make up materials furnishedbut we also think that from the “nature” of the bailment and the “circumstances,” they should be held to the greatest degree of care and diligence.
But if, in the exercise of such care as is, from the nature of the case, thought necessary to prevent the grain or the flour from loss by destruction, theft, or being carried off through mistake, it should be lost by inevitable casualty, “without the imprudence, negligence, or fault” of the miller, then we think he should not be liable.
It results, therefore, that in that part of his Honor’s charge where he instructed the jury that if the plaintiff’s grain “was lost by theft” the defendant would be liable to pay for it, “unless such theft was committed by overpowering force,” he erred. The defendant is bound to use his best endeavors for its preservation; but he would not be liable even in case of theft, unless he was guilty of some imprudence, negligence, or fault. And this should have been submitted to the jury. Eor this error the judgment will be reversed, and the cause remanded for another trial. It is also assumed in argument that the defendant is not liable, because the slave of the plaintiff “set the bag of flour aside, apart from the other grain in the millthat he was the agent of the plaintiff, who thereby became possessed of his flour, and after that the defendant was not responsible for it.
To the correctness of this argument we cannot assent. It is the duty of a public miller to receive the grain *370 brought to Ms mill, to deposit it in some place of safety, to grind it according to its turn, and to sack the meal or flour so as to have it in proper condition to carry away, and then to see that it is delivered in each case to the owner or his agent, when he desires to remove it from the mill.
It is not the duty of the owner to aid in any part of this business; and if his slave by whom he sent the grain to the mill does so aid, he acts as the agent of the miller and not the owner.
If the miller deliver the flour to the slave of the owner when he is ready to leave, and he carries it out of the mill, then he has lost his custody of and control over it, and he is discharged from liability, though the slave should afterwards be guilty of a breach of confidence, and convert it to his own use.
But the mere removing of the flour by the slave from one part of the mill to another, for the purpose of putting it out of the way of other grain, could have no such effect.