HORACE HULETT and ALLEN P. HULETT, Respondents, *v.*
CHARLES W. SWIFT, Executor of Isaac Balding, deceased,
Appellant.

An innkeeper is an insurer of property, committed to his custody by a guest,
unless the loss be due to the culpable negligence or fraud of the guest, or to
the act of God or the public enemy.

The rule that the landlord shall be held responsible for goods intrusted to him
for safe keeping by the traveler, and subject to detention for his charges, is
founded in considerations of public policy.

The statute enables him to require the observance of appropriate precautions by
the guest; but it does not absolve him from his obligation to respond for
losses caused by the negligence of himself or his servants, or by the depre-
dations of knaves or marauders, within or without the curtilage.

*Held*, accordingly, that the innkeeper is responsible for the loss of the goods
of his guest by fire, the cause of the fire being unknown, and the guest being
free from negligence.

APPEAL from the Supreme Court. The action was for the
value of property committed by a guest to the charge of the
defendant's testator, an innkeeper in Poughkeepsie, and lost
by a fire, which destroyed the barn and stable attached to the
inn, on the 26th of July, 1860.

The facts, as admitted by the pleadings and found by the
referee, were substantially these:

One Banks, an employee of the plaintiffs, stopped at the
Balding House, in Poughkeepsie, with his own horses and
wagon, and a load of buckskin goods belonging to the plain-
tiffs. He was received as a guest, and the innkeeper took
charge of his property. A fire occurred in the course of the
night, which occasioned a loss to Banks and the plaintiffs of
$1,250.50.

It did not appear how the fire originated, and the defend-
ant failed to show that it was not the result of negligence.
The referee held that the plaintiffs, in their own right, and
as the assignees of Banks, were entitled to the value of the
property destroyed.

On appeal to the General Term of the fourth district, the
judgment was affirmed, on the ground that the innkeeper is

an insurer of the goods of his guest while they remain in his custody. From that decision the defendant appealed.

*John Thompson*, for the appellant.

*Wells & Dudley*, for the respondents.

PORTER, J. An innkeeper is responsible for the safe keeping of property committed to his custody by a guest. He is an insurer against loss, unless caused by the negligence or fraud of the guest, or by the act of God or the public enemy. This liability is recognized in the common law as existing by the ancient custom of the realm; and the judges in *Calye's case* treated the recitals in the special writ for its enforcement, as controlling evidence of the nature and extent of the obligation imposed by law on the innkeeper. (8 Coke, 32; 1 Smith's Lead. Cas., Hare & Wallace's ed., 194, 307.)

This custom, like that in the kindred case of the common carrier, had its origin in considerations of public policy. It was essential to the interests of the realm, that every facility should be furnished for secure and convenient intercourse between different portions of the kingdom. The safeguards, of which the law gave assurance to the wayfarer, were akin to those which invested each English home with the legal security of a castle. The traveler was peculiarly exposed to depredation and fraud. He was compelled to repose confidence in a host, who was subject to constant temptation, and favored with peculiar opportunities, if he chose to betray his trust. The innkeeper was at liberty to fix his own compensation, and enforce summary payment. His lien, then as now, fastened upon the goods of his guest from the time they came to his custody. The care of the property was usually committed to servants, over whom the guest had no control, and who had no interest in its preservation, unless their employer was held responsible for its safety. In case of depredation by collusion, or of injury or destruction by neglect, the stranger would of necessity be at every possible disadvantage. He would be without the means either of proving guilt or detecting it. The witnesses to whom he

must resort for information, if not accessaries to the injury, would ordinarily be in the interest of the innkeeper. The sufferer would be deprived, by the very wrong of which he complained, of the means of remaining to ascertain and enforce his rights, and redress would be well-nigh hopeless, but for the rule of law casting the loss on the party entrusted with the custody of the property, and paid for keeping it safely.

The considerations of public policy in which the rule had its origin, forbid any relaxation of its rigor. The number of travelers was few, when this custom was established for their protection. The growth of commerce, and increased facilities of communication, have so multiplied the class for whose security it was designed, that its abrogation would be the removal of a safeguard against fraud, in which almost every citizen has an immediate interest. The rule is in the highest degree remedial. No public interest would be promoted, by changing the legal effect of the implied contract between the host and the guest, and relieving the former from his common law liability. Innkeepers, like carriers and other insurers, at times find their contracts burdensome; but in the profits they derive from the public, and the privileges accorded to them by the law, they find an ample and liberal compensation. The vocation would be still more profitable, if coupled with new immunities; but we are not at liberty to discard the settled rules of the common law, founded on reasons which still operate in all their original force. Open robbery and violence, it is true, are less frequent as civilization advances; but the devices of fraud multiply with the increase of intelligence, and the temptations which spring from opportunity, keep pace with the growth and diffusion of wealth. The great body of those engaged in this, as in other vocations, are men of character and worth; but the calling is open to all, and the existing rule of protection should therefore be steadily maintained. It extends to every case, and secures the highest vigilance on the part of the innkeeper, by making him responsible for the property of his guest. The traveler is entitled to claim entire security for

his goods, as against the landlord, who fixes his own measure of compensation, and holds the property in pledge for the payment of his charges against the owner.

In cases of loss, either the innkeeper or the guest must be the sufferer ; and the common law furnishes the solution of the question, on which of them it should properly fall. In the case of *Cross* v. *Andrews*, the rule was tersely stated by the court. "The defendant, if he will keep an inn, ought, *at his peril*, to keep safely his guests' goods." (Croke's Eliz., 622.) He must guard them against the incendiary, the burglar and the thief; and he is equally bound to respond for their loss, whether caused by his own negligence, or by the depredations of knaves and marauders, within or without the curtilage.

This doctrine is too well settled in the English courts, to be shaken by the exceptional case on which the appellant relies. (*Calye's case*, 8 Coke, 32 ; *Cross* v. *Andrews*, Croke's Eliz., 622 ; *Richmond* v. *Smith*, 8 Barnw. & Cress., 803 ; *Cashill* v. *Wright*, 37 Eng. Law and Eq., 175).

In the courts of this State, it has always been held that the innkeeper, like the carrier, is, by the common law, an insurer. (*Purvis* v. *Coleman*, 21 N. Y., 111, 112, 117 ; *Wells* v. *Steam Navigation Co.*, 2 Comst., 204, 209 ; *Gile* v. *Libby*, 36 Barb., 70, 74 ; *Ingallsbee* v. *Wood*, id., 458 ; *Washburn* v. *Jones*, 14 id., 193, 195 ; *McDonald* v. *Edgerton*, 5 id., 564 ; *Taylor* v. *Monnot*, 4 Duer, 117 ; *Stanton* v. *Leland*, 4 E. D. Smith, 94 ; *Grinnell* v. *Cook*, 3 Hill, 488 ; *Piper* v. *Many*, 21 Wend., 282, 284 ; *Clute* v. *Wiggins*, 14 Johns., 175).

The rule, as recognized by us, is sanctioned by the leading authorities in the other States. (1 Pars. on Cont., 623 ; 1 Smith's Lead. Cas., Hare & Wallace's ed., 307 ; *Shaw* v. *Berry*, 31 Maine, 478 ; *Sibley* v. *Aldrich*, 33 N. H., 533 ; *Berkshire Woolen Co.* v. *Proctor*, 7 Cush., 427 ; *Mason* v. *Thompson*, 9 Pick., 280 ; *Towson* v. *Havre de Grace Bank*, 6 Harr. & Johns., 47 ; *Thickston* v. *Howard*, 8 Blackf., 535, 537 ; *Kisten* v. *Hildebrand*, 9 B. Monr., 72).

A shade of doubt has, at times, been thrown over the question, by the unguarded language of elementary writers,

and especially by the suggestion of Judge STORY, in his treatise on the law of bailments, that the innkeeper could
exonerate himself from liability by proving that he was not
guilty of actual negligence; and this view seems to have
been adopted in two of the Vermont and one of the English
cases. (Story on Bailments, sec. 472; *Dawson* v. *Champney*,
8 Adolphus & Ellis, N. S., 164; *Merrit* v. *Claghorn*, 23 Vt.,
177; *McDaniels* v. *Robinson*, 28 id., 337). The doctrine of
these cases is opposed to the general current of English and
American authority, and evidently had its origin in a misapprehension of the rule as stated by the judges in *Calye's case.*
It is true that the liability of the innkeeper, by the custom
of the realm, was not unlimited and absolute, and that the
loss of the goods of the guest was merely presumptive evidence of the default of the landlord. But this presumption
could only be repelled, by proof that the loss was attributable to the negligence or fraud of the guest, or to the act of
God or the public enemy. No degree of diligence or vigilance on the part of the innkeeper, could absolve him from
his common law obligation for the loss of his guest, unless
traceable to one of these exceptional causes. (*Shaw* v.
*Berry*, 31 Maine, 478; *Sibley* v. *Aldrich*, 33 N. H., 553.)
The rule is · salutary, and should be steadily and firmly
upheld, subject to the statutory regulations for the protection
of hotel proprietors from fraud and negligence on the part
of their guests.

We are of opinion that the judgment should be affirmed,
on the ground that the testator was an insurer of the property committed to his charge, and that its loss has not been
traced to either of the causes recognized as creating an exception to the general rule of liability.

It is proper to remark, that if the law were otherwise, and
the innkeeper were responsible only for actual negligence, it
would not avail the defendant on the appeal papers. in the
present case, as they come to us from the court below. The
findings of the referee are not embodied in the case, as
required by the existing practice; and on reference to the
record prefixed to the case, it appears that the defendant

failed to repel by proof the conceded presumption of negligence. (*Bissell* v. *Hamlin*, 20 N. Y., 519; *Grant* v. *Morse*, 22 id., 323.)

The judgment should be affirmed, with costs.

All the judges concurred in the opinion of PORTER, J., except DENIO, Ch. J., who delivered a dissenting opinion, in which BROWN, J., concurred.

Judgment affirmed.