Fowler *v.* Dorlon.

---

## FOWLER *vs.* DORLON and others.

The loss of the goods of a guest, while at an inn, is presumptive evidence of negligence on the part of the innkeeper. Upon this presumption he is *prima facie* liable. But he can repel it by showing that the loss is attributable to the personal negligence of the guest himself.

Gross negligence need not be shown. It is enough to exonerate the innkeeper, if the guest has, by his own neglect or imprudence, exposed his goods to peril.

In an action against an innkeeper, to recover for the loss of money contained in a valise, the defendant has a right to have the jury instructed, in reference to the plaintiff's conduct at the time of the loss, that if they are of opinion that

Fowler *v.* Dorlon.

in concealing the fact that the valise contained money, and treating it as mere baggage, he was guilty of gross negligence, the defendant was exonerated from liability.

MOTION for a new trial. The action was brought against the defendants as innkeepers, to recover the value of a valise and contents, belonging to one Stephen Barker. The cause of action had been assigned by Barker to the plaintiff. The action was tried at the Rensselaer circuit, before Mr. Justice WRIGHT. Upon the trial, it appeared that the defendants had for many years been the proprietors of a hotel in the city of Troy, known as the Mansion House, and that Barker, when visiting Troy, had been in the habit of stopping at this hotel. He resided in the county of Washington. On the morning of the 27th of June, 1852, he arrived at Troy, from the west. Upon leaving Rochester, the evening before, he had placed his valise in the baggage car and received for it a check. The valise, besides some wearing apparel, contained $2000 in bank bills. As the cars passed down River street, in Troy, they stopped in front of the Mansion House, and Barker there got out. He handed the check to Calvin Blake, whom he met there, with a request, as Blake testified, that he should get out his valise for him. Barker testified that he did not recollect whether he said any thing to Blake at the time. Blake received the valise from the baggage master and placed it upon the sidewalk. Barker testified that when he saw Blake approaching him he turned and went to the mansion house. Blake testified that Barker stood facing him when he set down the valise. Barker, without observing what had been done with his valise, proceeded to the Mansion House, where he, after a few minutes, asked for a room, and upon being asked what baggage he had, then, for the first time, missed his valise. It had been stolen. Blake, at the time, was in the employ of the proprietors of a line of stages running between Troy and Bennington, as an agent and runner. The office of this line of stages was kept in the room occupied as the office of the hotel. Blake boarded at the Mansion House, and, with the knowledge of its proprietors, had been in the habit of soliciting guests for

the house. Barker testified that just as he turned to go to the Mansion House, the cars started on. Blake having deposited the valise upon the walk, stepped upon the platform of one of the cars and went on with the train, for the purpose of procuring passengers for his line of stages.

The judge charged the jury that the primary question to be determined upon the proof was, whether or not, at the time of the loss of the valise, the relation of innkeeper and guest existed between the defendants and Barker: that if, at that time, Blake was in the actual employment of the defendants, or if, though not actually in such employment, he was acting there with the knowledge and approbation of the defendants, they were liable for his acts in that capacity, and the baggage received by him of Barker, was within the custody of the defendants as innkeepers. That if the jury should find that Blake was in fact the servant of the defendants, or that the defendants were to be regarded as his masters or principals, then they were to inquire further, whether Barker was guilty of gross negligence in his control and disposition of the property claimed to be lost; that if they should find that he was, the defendants would not be liable, though they should be satisfied from the evidence, that the relation of innkeeper and guest, as between Barker and the defendants, had been assumed, and existed at the time the property was lost.

The counsel for the defendants asked the court to charge the jury that an innkeeper is not responsible for a large sum of money of his guest, contained in his baggage, when the guest neglects or omits to inform the innkeeper of the fact that the baggage contains money. The court refused so to charge, and the defendants' counsel excepted. The defendants' counsel also asked the court to charge the jury, that if they should find that Barker was guilty of gross negligence, either in not disclosing to Blake the fact that the valise contained money, or in treating it as mere baggage, at the time it was taken from the cars, the loss must be his, and the defendants were not liable. The court declined so to charge, but charged the jury that a guest was not bound to inform the innkeeper of the con-

tents of his baggage to enforce a liability against the latter for its loss, although a guest may be bound to the exercise of ordinary care and diligence in the control and preservation of his baggage. The counsel for the defendants excepted. The jury rendered a verdict in favor of the plaintiff for $2050. The court thereupon directed the exceptions to be heard, in the first instance, at a general term.

*W. A. Beach*, for the plaintiff.

*D. L. Seymour*, for the defendants.

HARRIS, J. The judge at the circuit was right when he instructed the jury that the primary question in this case was whether at the time the valise was lost, the relation of innkeeper and guest existed between Barker and the defendants. But, upon this question, I am inclined to think there was not sufficient evidence to require that it should be submitted to the jury. If Barker intended, when he left the cars, to make himself the guest of the defendants, such purpose was concealed within his own breast. He neither said nor did any thing to evince such intention. He handed his check to Blake; but this at most was an equivocal act. It might have been, as Blake seems to have understood it, that he might do him the service to receive for him his valise from the baggage master. It might have been because he knew that Blake was the agent of the Bennington stages, and he intended to become a passenger; or, it might have been because he thought Blake was also in the employ of the defendants, and he intended to become their guest. Whatever his purpose, it had not yet been indicated. How then can it be said that the mere act of delivering his check to Blake, and the request that he should get out his valise for him, is sufficient evidence to warrant the jury in finding that then, and before he entered the defendants' house, or gave directions that his baggage should be taken there, the relation of guest and innkeeper was created between Barker and the defendants? But as there was no motion for a nonsuit,

and this case is heard in the first instance at the general term, a new trial cannot be granted because the verdict is against evidence.

The judge charged the jury that if Blake was in the actual employment of the defendants, or, though not in their actual employment, if he was acting with the knowledge and approbation of the defendants, in such a manner as to induce the guests of the defendants to believe that he was their servant, they were liable for his acts, and the baggage received by him of Barker was within the custody of the defendants as innkeepers. Upon this branch of the case, I think the judge should have gone further, and should have submitted to the jury the distinct question whether Blake received the baggage as the servant of the defendants. As the charge stands, in the case, this fact seems to have been assumed. But there are no exceptions to the charge, and therefore, upon this application, this defect is not available to the defendants.

The judge further charged the jury, that if they should find that Blake was in fact the servant of the defendants, or that the defendants were to be regarded as his principals, they were next to inquire whether Barker was guilty of gross negligence in his control and disposition of the property claimed to be lost. Here, too, I think the case was presented to the jury too strongly against the defendants. The loss of the goods of a guest while at an inn, is presumptive evidence of negligence on the part of the innkeeper. (Upon this presumption he is *prima facie* liable; but he can repel it by showing that the loss is attributable to the personal negligence of the guest himself. Gross negligence need not be shown. It is enough to exonerate the innkeeper, if the guest has, by his own neglect or imprudence, exposed his goods to peril. (*See Story on Bailments,* § 472.)

In *Armistead* v. *White,* (6 *Law and Eq. Rep.* 349,) the action was against an innkeeper, for money lost by a guest. Upon the trial, Platt, B., left it to the jury to determine, upon the evidence in the case, whether the plaintiff had by his *gross negligence* relieved the defendant from his liability. The de-

fendant had a verdict, and upon a motion for a new trial, Lord Campbell said: "It is questionable whether the direction was not too favorable for the plaintiff, because it is doubtful whether, in order to relieve the innkeeper from his liability, there must be *crassa negligentia* in the guest."

Here, again, the defendants seem to have acquiesced in the rule laid down by the court, for we find them not only omitting to except to the charge, but subsequently asking the court to charge that they were not liable if the jury should find that Barker had been guilty of *gross negligence*, either in not disclosing to Blake the fact that the valise contained money, or in treating it as mere baggage, at the time it was taken from the cars. But in the refusal thus to charge, I think there was error. It is true that the judge had already told the jury that if, in his control and disposition of his property, Barker had been guilty of gross negligence, the defendants were not liable; but now, when the defendants asked to have this principle applied to the conduct of Barker at the time the loss occurred, the judge declines so to instruct the jury. The proposition which they asked to have submitted to the jury was, in substance, that inasmuch as gross negligence on the part of Barker would exonerate the defendants from liability, the jury had the right to infer such negligence from the fact that Barker, at the time the valise was taken from the cars, not only concealed from Blake the fact that it contained money, but himself treated it as mere baggage. I agree with the learned judge, that Barker was not bound to disclose the fact that the valise contained money; but I think the jury might well have found, if they had understood that they were at liberty to consider the question, that the conduct of Barker was imprudent to such a degree as to amount to gross negligence. That he did not act with the ordinary caution of a prudent man, is very clear. If he thought it safe to carry so large an amount of money in the way this was carried, he might at least be expected, when the valise containing it should be taken from the baggage car, to keep his eye upon it until it should be deposited in the hotel. Or, if he thought fit to intrust a man in the situation of Blake, with so valuable

Fowler *v.* Dorlon.

an article, it would seem but a reasonable exercise of prudence that he should at least request him to deliver it at the hotel without delay. Had he even done this, it is probable no loss would have occurred, for he would have learned from Blake that his business required him to proceed with the train, and thus would have been led to protect his valise for himself. Or, if he had ventured to leave it behind, it seems to me that no man of ordinary prudence would have failed, at least, to look after it, when he reached the house, and seeing it, as he probably would, lying, uncared for, in the street, would have immediately taken measures to secure it. It cannot be pretended that the circumstances, as they appear in the case, were not quite sufficient to justify a verdict finding that Baker was guilty of gross negligence.

It is true, the court, when asked to instruct the jury that if they should find from the conduct of Barker when the valise was taken from the baggage car, that he was chargeable with gross negligence, the defendants were not liable, stated the general proposition which had already been stated in the charge, that a guest is bound to the exercise of ordinary care and diligence in the control and preservation of his baggage ; but I think the defendants had a right to have the jury instructed, in reference to the conduct of Barker upon the occasion when the loss occurred, that if they should be of opinion that in concealing the fact that the valise contained money, and treating it as mere baggage, he was guilty of gross negligence, the defendants were exonerated from liability. I am therefore of opinion that a new trial should be granted, with costs to abide the event.

WATSON, J., concurred.

GOULD, J. Fully acquiescing in the *general* grounds of the preceding opinion, I have had considerable difficulty in arriving at the conclusion that the judge at the circuit did not give the defendants the benefit of *all* that they distinctly and properly asked of him. And though I have had no doubt that Barker was, to say the very least, far from what I should call *prudent*, in his course as to so valuable a valise, I have hesitated as to

the power of the court to relieve the defendants in the shape in which their case comes up. In making requests, to found exceptions, at a trial, great precision should be used, to ask distinctly for what really is wanted, and for *that only ;* as asking for *too much* vitiates a position, otherwise sound.

This case seems one in which the defendants should, in fairness, be allowed the full benefit of their *actual* legal rights, distinctly presented to both court and jury. And I agree in awarding a new trial.

ALBANY GENERAL TERM, March 3, 1856. *Harris, Watson* and *Gould,* Justices.]