# WILKINS a. EARLE.

*New York Superior Court; General Term, June, 1865.*

### INNKEEPERS' LIABILITY.—NOTICE OF PROPERTY DEPOSITED.

An innkeeper is not liable to his guest for the loss of money, brought into the inn by the latter, beyond such amount as is necessary for his travelling expenses, unless a special contract is shown, or an actual delivery to the innkeeper or his servant, with notice of the amount deposited, is shown.

The liability of the innkeeper for baggage is analogous to that of common carriers of passengers.

Where the keeper of a hotel kept notices posted in his hotel cautioning guests against leaving money or valuables in their rooms, as the proprietors would not be responsible therefor, and requiring packages of value to be properly labelled, and deposited in the safe, in the office; and the plaintiff delivered to their clerk a package containing twenty thousand dollars, in money marked only with his name, and being asked by the clerk what it contained, answered "money," without stating the amount,—*Held*, that the innkeepers were not liable for the embezzlement of it by the clerk, except for such amount as was found by the jury to be necessary for the guest's travelling expenses. The guest was guilty of negligence in not distinctly describing or labelling the package, with a statement of the value.

The notice given by a guest should be not only of the kind of property, but of its value.

An innkeeper is responsible for all moneys deposited with him, without reference to any negligence. (Per McCUNN, J., dissenting.)

This was an action brought by William T. Wilkins against William P. Earle and William A. Earle, to recover a sum of money which the plaintiff, when a guest in the defendants' hotel, had deposited in their safe, and which had been embezzled by their clerk.

The facts appeared to be as follows:

On the 20th of April, 1863, Mr. Wilkins, the plaintiff, came to this city and went to Earle's Hotel; he registered his name and asked for a room, and was told that the house was crowded, and that he could get a bed, but not a single room, and he was assigned to room No. 124; in the room was the following notice:

Wilkins *a.* Earle.

"Guests are cautioned against leaving money or valuables in their rooms, as the proprietors will not be responsible for them. All packages of value should be properly labelled and deposited in an iron safe, which is kept in the office for that purpose.

"Guests will please comply with the above requests, or the proprietors are relieved, in case of loss, from all responsibility."

After said notice followed a copy of the Law of 1855, relative to innkeepers:

On the same evening, the plaintiff handed a package to a clerk in the office, named Howard. Howard picked the package up, and asked Wilkins what it was. Wilkins said it was money, which he wished deposited in the safe.

The clerk then, in plaintiff's presence, procured the key of the safe, opened it, deposited the package, and locked it. Plaintiff asked him for a check. The clerk said they gave no checks, but required guests to identify their packages, and assured plaintiff no accident had ever occurred. One of the proprietors was in the office at the time, and plaintiff thinks Howard obtained the key from him. Early the next morning, before Mr. Earle was up, Howard went to Earle's room, and asked him for the key of the safe, which was given. Afterwards, when Mr. Earle came down, he found the safe locked, and, as he alleges, Howard had absconded, and had taken the money of plaintiff with him, together with other moneys deposited in the safe.

The amount of money contained in the plaintiff's package was twenty thousand dollars. Under the instructions of the court, the jury found that one thousand dollars was a reasonable sum for the plaintiff to have had with him, as travelling expenses, but found also a general verdict for the plaintiff for the full amount claimed.

The cause now came before the court, at general term, upon exceptions taken at the trial.

*Barney, Butler & Parsons,* and *E. Pierrepont,* for plaintiff.

*John McKeon, Fred. Smyth,* and *W. F. Allen,* for defendants.

By the Court.*—Robertson, Ch. J.—The liability of keepers of inns for property, which travellers, who are guests therein, bring with them, is as old as the existence of inns in England. (Hollingshed's Chronicle, cited in Edw. on Bailment, *App.*, 620.) The whole doctrine in relation thereto is summarily stated in the recital of an ancient original writ, entered in the Register of Writs (f. 105), among writs of trespass (on the case), and set out at length in Fitzherbert's Natura Brevium (94 a. b.). Such writ forms the groundwork of the early decision in Calye's case (8 *Rep.*, 32), in which the general principles embraced in such doctrine are evolved from such writ; all of which have some bearing on this case, and are in substance as follows:

1. The place of loss is required to be an inn (*commune hospitium*), which is defined to be " a house where the traveller is furnished with every thing he has occasion for on the way" (Thompson a. Lacy, 3 *B. & A.*, 283); the keeper of it not being bound to furnish any thing else (Fell a. Knight, 8 *M. & W.*, 276); such as a place of sale for goods (Burgess a. Clements, 4 *M. & S.*, 306); or to receive any one but travellers (Rex a. Luellin, 12 *Mod.*, 445), or any thing but what is usually brought with, or carried by, them (Broadwood a. Granara, 10 *Exch.*, 417; *S. C.*, 24 *Law J.* [*Exch.*], 1). Although he is liable to an action for not receiving them (Com. Dig. action on the case; Rex a. Ivens, 7 *C. & P.*, 213; Bacon's Abr. Inns Court, *C.*, 3; Thompson a. Lacy, 3 *B. & A.*, 283), as well apparently as indictment (Year Book, 5 *Edw. 1 V.*, Easter T., fol. 10, by Hogdon, J.; 1 *C. & K.*, 404; *Edw. on Bailm.*, 408); and he cannot make any terms or conditions with his guests (6 *T. R.*, 17, per Ld. Kenyon; Cole a. Goodwin, 19 *Wend.*, 269, per Cowen, J.). A house becomes an inn by the mere custom of receiving persons transiently as guests, without a definite agreement as to time (Wintermunte a. Clarke, 5 *Sandf.*, 242; Taylor a. Monnot, 4 *Duer*, 116). But a mere restaurant or place of eating is not one (Carpenter a. Taylor, 1 *Hilt.*, 193).

2. The guest must be a traveller (1 *Roll. Abr.*, 394; 2 *Brownl.*, 254; Rex a. Luellin, 12 *Mod.*, 445; Ingolsbee a. Wood, 36 *Barb.*, 452; Bacon's Abr. Inns, *C.*, 5; Parkhurst a. Foster, *Salk.*, 387); the time of his stopping is, however, immaterial, whether it be

---

* Present, Robertson, Ch. J., Garvin and McCunn, JJ.

of some duration or for mere refreshment (Barnell *a.* Mellor, 5 *T. R.*, 273; Carpenter *a.* Taylor, 1 *Hilt.*, 193; McDonald *a.* Egerton, 5 *Barb.*, 560).

3. The loss or injury for which the innkeeper is liable is, that of or to goods and chattels (*bona et catalla*) placed within the inclosure and shelter of the inn and its appurtenances (*infra hospitium*), as laid down in the Year Books (11 *Hen. IV.*, 45 a. b.; 22 *Hen. VI.*, 21 b.; 42 *Eliz.*, 3, 11 a. b.; 42 *Ap.*, pl. 1). Although animals put out to pasture at the guest's request are not so (1 *Roll. Abr.*, 34; 2 *Brownl.*, 255; Hawley *a.* Smith, 25 *Wend.*, 642); yet vehicles left in the street by the innkeeper's servant (Jones *a.* Tyler, 1 *Ad. & El.*, 522), or a wagon-load of goods in like manner placed in an uninclosed shed (Piper *a.* Manny, 21 *Wend.*, 282), or a sleigh-load of grain in an outhouse where such articles were usually stored (Clute *a.* Wiggins, 14 *J. R.*, 175), and goods placed in a "commercial" room (Richmond *a.* Smith, 8 *B. & C.*, 9), were held to be so.

4. The person by whom the articles were taken or the mode of loss, is immaterial (Year Book, 22 *Hen. VI.*, 38, pl. 8; *Roll. Abr.*, tit. *Hostler*, 7; Clute *a.* Wiggins, *ubi sup.*; Gile *a.* Libby, 36 *Barb.*, 70; 2 *Kent's Com.*, 593; *Story's Com.*, 306, §§ 470, 479; *Bell's Com.*, 402, 403 (4th ed.), 496 (5th ed.); *Edw. on Bailm.*, 400, 403, 407; *Jones on Bailm.*, 94); unless such person were the servant or companion of the guest (*Cro. Eliz.*, 285; Burgess *a.* Clements, *ubi sup.*; Fowler *a.* Dorlan, 24 *Barb.*, 384); or the negligence of the guest contributed to the loss (10 *Eliz.*, *Dyer*, 266; Burgess *a.* Clements, *ut ante*; Farnsworth *a.* Parkwood, 1 *Stark.*, 249).

5. For clothing, ornaments of the person, including a reasonable amount of jewelry, generally worn by travellers, which embraces a gold watch and chain, gold pen and pencil-case (Giles *a.* Libby, *ubi sup.*), and for sufficient money to pay the travelling and other reasonable daily expenses of the guest, the innkeeper is held liable (Taylor *a.* Monnot and Giles *a.* Libby, *ubi sup.*; Van Wyck *a.* Howard, 12 *How. Pr.*, 197; Stanton *a.* Leland, 4 *E. D. Smith*, 88).

Beyond that, unless the innkeeper has voluntarily and knowingly undertaken the custody or care of property, no case has adjudged his liability; some elementary writers and some dicta

make him liable for every thing a traveller chooses to bring
into an inn.   Judge Story, in his Commentaries, states the lia-
bility in general terms (p. 306, § 470); Chancellor Kent, in his,
extends it to "all the movable goods, chattels, and moneys of
the guest which are within the inn" (vol. ii., 593).   In Calye's
case (*ubi supra*) it is said to embrace even documents relating to
the title of lands and choses in action; in Kent *a.* Shuckard
(2 *B. & Ad.*, 803), the only question raised was, whether the inn-
keeper was liable for money as well as other chattels, and it
was held that he was; the amount lost in that case was only
fifty pounds, and was stated to have been kept to meet daily ex-
penses only.   In Quinten *a.* Courtney (1 *Hay.* [N. C.] 41), the
amount was only two hundred dollars; and the case of Fowler
*a.* Dorlon, in our own court (24 *Barb.*, 384), is in direct conflict
with the principle held in that case.   In the Berkshire Woollen
Company *a.* Proctor (7 *Cush.*, 417), although the money lost
was more than sufficient to defray the expenses of the particu-
lar guest in whose charge it was, it was the property of another
person, and left with such guest to pay to others who were
guests at the same inn, or defray their expenses there, they
being witnesses in a lawsuit, whose management was the er-
rand of such guest at such inn; and all such circumstances are
dwelt upon in the opinion delivered in that case.   Nothing was
said, except in general terms, in Purvis *a.* Coleman (21 *N. Y.*,
111), about the liability of an innkeeper who had not given
any notice to his guests of means provided for the safe-keeping
of their property.   In that case, he was held to be exempt from
liability for a loss, in consequence of the failure of the guest to
avail himself of such means after notice.   In the case of Giles
*a.* Libby (*ubi supra*), it was held that ornaments or money usually
carried about the person by a prudent man, did not come with-
in the provisions of the statute of 1855 (ch. 421), exempting
innkeepers from liability for goods of a guest not deposited in
a place of safe-keeping provided by them, after notice of such
provision, as the money lost ($25) was held not to be more than
a prudent person might carry about with him.

Being thus at sea in regard to direct decisions as to the ex-
tent of an innkeeper's liability for the goods of his guest, we
can only have recourse to indirect recognitions of the true doc-
trine in decided cases, to analogies to the liability of other per-

sons, and to principles drawn from the origin and nature of the legal relation of the innkeeper and his guests.

It has always been conceded that, upon all the goods for whose safe-keeping he is liable, an innkeeper has a lien for the keeping of his guest (Grinnell *a.* Cook, 3 *Hill*, 485; Ingoldsbee *a.* Wood, *ubi supra*), even when they are not the property of his guest. (Robinson *a.* Walter, 3 *Bulstr.*, 269; S. C., *Poph.*, 127.) But in the case of Broadwood *a.* Granara (10 *Exch.*, 417; S. C., 1 *Jurist; N. S.*, 19; 24 *L. J.* [*Exch.*, 1]), it was held that an innkeeper was not bound to receive a piano with a guest, and therefore had no lien upon it. Counsel in that case said, in argument, that he was "only compellable to take in such articles as both in nature and quality are reasonable for a traveller;" to which PARKE, B., assented, and added: "He is bound to take in those things with which a person ordinarily travels, . . . . to receive all goods which by his public profession he engages to receive;" but put the pertinent interrogatory, "Is he bound to take in articles of extraordinary bulk?" to which I would add, "or value?" the principle being precisely the same.

The origin of the liability of an innkeeper to his guest for the loss of the latter's property while in his inn, the principle of policy applicable to it, and, indeed, the whole relation, are so analogous to those applicable to a common carrier and a passenger transported by him, in relation to what is called his "baggage," that the extent and conditions of their liability have been held to be the same. (Orange County Bank *a.* Brown, 9 *Wend.*, 85; *Jones on Bailment*, 103; *Edwards on Bailment*, 414.) The definite term baggage, it is true, has been applied only to the property of the passenger carried about with him for travelling purposes, for which the carrier is liable; and probably if the same term had been applied, in legal phraseology, to the goods of a guest at an inn, for whose safe-keeping an innkeeper was liable, the question of liability would have been long since settled. The same obligation is imposed upon both, upon account of the public character of their occupation of receiving travellers, by the carrier as passengers and by the innkeeper as guests, which involves also the necessity of receiving their travelling equipments, although the carrier escapes liability, if they are not delivered directly into his

custody. (Tower *a.* Utica & Schenectady R. R. Co., 7 *Hill,* 47 ; Cohen *a.* Frost, 2 *Duer*, 335.) Generally, neither receives separate compensation for care in regard to such baggage (Powell *a.* Meyers, 26 *Wend.*, 591), except when a carrier receives compensation for it as freight. The same danger, in both cases, of fraud or carelessness on the part of the innkeeper and carrier, or their servants, and the impossibility of the constant attention of the owner of the goods to their safe-keeping, is the ground of liability. Although the carrier has been held to be exempt from liability for money destined to meet travelling expenses (Orange Co. Bank, *a.* Brown, 9 *Ib.*, 85), yet this rule does not prevail when travelling abroad (Duffy *a.* Thompson, 4 *E. D. Smith*, 178); in which case, even a gun carried in a trunk and the tools of a trade have been included. (Davis *a.* Cayuga & Susquehanna R. R. Co., 10 *How. Pr.*, 330.) Articles usually worn about the person, such as a watch and articles of jewelry, are included in such liability, if in a trunk. (McCormick *a.* Hudson R. R. Co., 4 *E. D. Smith*, 181.) And although it is laid down in general terms, that every thing destined for the personal use, convenience, and even instruction and amusement of a passenger, is included in the baggage for whose safe transportation a carrier is liable (Hawkins *a.* Hoffman, 6 *Hill*, 586), yet the extent of his liability is very much narrowed; it does not embrace merchandise (Pardee *a.* Drew, 25 *Wend.*, 459), or samples of it (Hawkins *a.* Hoffman, *ubi supra*), or boxes of jewelry for sale (Richards *a.* Westcott, 2 *Bosw.*, 589), or silver ware (Bell *a.* Drew, 4 *E. D. Smith*, 59), or presents for friends (*Ib.*), or regalia or jewels of a society (Nevins *a.* Bay State Steamboat Company, 4 *Bosw.*, 225) ; and it is fully settled that the mere acceptance of a trunk or baggage, containing what is not for personal use, does not bind the carrier, without knowledge of such contents. (Richards *a.* Westcott, *ubi supra*.) Of course, different rules prevail, in regard to a common carrier of mere freight (Batson *a.* Donovan, 4 *B. & A.*, 21 ; Miles *a.* Cattle, 6 *Bing.*, 743), where goods of all kinds and of any amount of value are received, and a distinct compensation is paid for carrying them. Deceit practised in regard to goods carried as baggage relieves the carrier from liability, which it would not, if carried as freight. (Richards *a.* Westcott, *ubi supra*.) The presumption in regard to articles brought by

travellers to an inn, as well as to the depot of a carrier for transportation, when contained in trunks or packages and of unknown value, must be that they consist merely of the ordinary accompaniments of a traveller when travelling, and not articles or securities for commercial or other purposes; if they are more, both the innkeeper and the carrier are at least entitled to notice of their value and character beyond that extent.

Previous to the introduction of the law allowing parties to be witnesses for themselves, travellers, in case of a loss at an inn, of their personal effects, were allowed to testify to the contents of their trunks (Taylor *a*. Monnot, *ubi supra*); and this was placed on the ground of the necessity of the case, counterbalancing the consideration of any danger arising therefrom by the fact that the loser could only recover to the extent of the value of what usually is carried by travellers. But the evil arising from such admission of testimony, which would be slight when confined within such limit, would become gigantic if a traveller could testify to the loss of articles of indefinite value, as to which there would be no power of contradiction.

It is possible that the liability of an innkeeper may be divided into two elements, as well as that of a carrier (Dorr *a*. N. J. Steam Navigation Co., 4 *Sandf.*, 136); and that he may, under that which makes him liable as a bailee, be so liable for goods received by him into his inn, when, either from their appearance or actual notice, he knows they are not the usual accompaniments of a traveller as such, and assents to their reception; but still such notice would be requisite.

It is very plain that it would be highly unjust, and not founded upon any principle upon which an innkeeper's liability rests, for a traveller to be able to bring into an inn unobserved any amount of valuables without notice to the innkeeper, and hold him responsible for their safe-keeping. There must be some restriction or qualification of such liability, if it exists; and that must be a warning to the innkeeper of the extra risk he is about to run. It is not very material in such cases whether such notice is made a condition of such liability, or the want of it is made such negligence on the part of the traveller as to be assumed to have contributed to the loss, and thereby exonerate the innkeeper. (Mateer *a*.

Brown, 1 *Calif.*, 225 ; Fowler *a.* Dorlon, 24 *Barb.*, 384.) In the case last cited (Fowler *a.* Dorlon), it was held to be such negligence in the traveller, who delivered his valise containing money to a servant of the innkeeper, not to have informed him of the fact, as to deprive him of the right of recovery for its loss. In this case, therefore, unless a special contract was made by the delivery by the plaintiff of the package of valuables in question to the clerk of the defendants on the occasion proved, the question of notice will be essential. If no special contract was made, and no notice given, the liability of the defendants would depend upon precisely the same principles as if the package in question had been taken from the plaintiff's room in the inn of the defendants.

If any special contract was entered into by the transaction between the plaintiff and the clerk, on the occasion in question of the delivery of the package to the latter, it could only have been by virtue of some authority given to the latter to make such contract. The safe in which the plaintiff requested such package to be deposited was one provided by the defendants, pursuant to the provisions of the statute of 1855, already referred to, and such clerk was not authorized to make any other contract except that to be implied from the mere receipt and deposit of the package in such safe, exactly in the condition in which it was. No authority was proved or found to have been given to him, to agree to become responsible for parcels of unknown value. The notice posted in the hotel of the defendants, required a package to be deposited to be " properly labelled," and the clerk informed the plaintiff " that they made their guests describe the property before redelivery." It was, therefore, only for packages properly labelled the defendants undertook to be responsible ; and it was only of such property as could be described, their clerk undertook to take care. If the defendants were not responsible for the contents of such package before it was deposited in such safe, while in their hotel, I do not think the clerk who received it was authorized to make, or did make on their behalf, a special contract for its safe-keeping at all hazards, especially when without any compensation commensurate with the risk.

This case, therefore, resolves itself into the question, whether the plaintiff, by depositing in the safe of the defendants the

package which he delivered to their clerk, under the circumstances under which he so deposited it, and with no more notice of its value than was given in his conversation with such clerk at the time of such delivery, was not guilty of such negligence, or did not so violate the implied condition of the liability of the defendants, as to exempt them entirely therefrom. A notice, to be sufficient to relieve the plaintiff from the imputation of negligence, should be not only of the kind of property, but its value. Otherwise, if the innkeeper was upon other principles not bound to accept its custody, he could not fix his compensation for the voluntary risk assumed by him, and would not increase his vigilance and precautions to prevent a loss. The package was sealed up, and marked only with the plaintiff's name, which furnished no information. The plaintiff, upon being asked what it was, answered merely "money," which is equally unsatisfactory and indefinite. Besides, the defendants notified him that, if their safe was to be used as a depository, packages deposited in it were to be "properly labelled," which, of course, involved a description of their contents or a statement of their value. The mere information that a package contained "money," without knowledge of the amount, would not necessarily arouse the increased vigilance of the defendants. Indeed, the whole conduct of the plaintiff, including his mode of carrying the property in question, the time and place selected for changing the envelope the sealing up with no external mark but his name, his curt reply to the question "What it was?" indicate rather a reluctance to make known its value. Such acts were deficient in candor to the defendants, whose safe he chose to make the depository of his capital in business, instead of the vaults of a bank. True, he might have lost such package, even if its contents had been disclosed, and yet the defendants might have had their attention attracted to it if it had been properly labelled. By not giving proper notice, the plaintiff must be presumed to have trusted to the safety of his place of deposit and the honesty of the clerk, rather than the responsibility of the defendants.

I am, therefore, of opinion, the defendants are only liable for the amount lost by the plaintiff equal to his travelling expenses, as found by the jury; the general verdict, which is con-

trolled by such special finding, must be reduced to that sum, and the exceptions as to the amount beyond that sustained; the other exceptions, being untenable, must be overruled and judgment rendered for the amount so found.

GARVIN, J., concurred.

McCUNN, J., dissenting.—I confess to having considered this case anxiously, and I may say, with more than ordinary attention and research, for the reason that the chief-justice has seriously changed his first views in the premises; and, also, from having great reluctance in putting forward my views in opposition to two of the learned justices of this court; yet I have been unable to bring my mind to the same conclusions as those recently entertained and promulgated as the opinion of the court in this case at general term.

There is but one important question in this case, and that question is, whether Mr. Earle, as innkeeper, is liable, under the circumstances, for the large amount of money deposited with him by plaintiff?

[After stating the facts of the case his honor continued as follows:]

The simple and only question in the case is whether, under the circumstances, Mr. Earle, the defendant, is liable in law as innkeeper to the plaintiff for the entire amount of $20,000, so received by him and deposited in his safe, or only liable for enough to cover travelling expenses—to wit, $1,000? I am clearly of opinion that he is liable to the plaintiff to the full extent of $20,000, with interest; and my conclusions to that effect have been strengthened and confirmed by the fact that all the cases in the English and American books, for nearly the last three hundred years, go, beyond a doubt, to establish the fact of his entire liability, for not one solitary case can be found sustaining the theory of a limited responsibility.

Indeed, the learned chief-justice admits that all the cases cited in his opinion go to show that, to a certain extent, innkeepers are liable, but says we are at sea about the extent of the liability; and cites a number of cases, all of which, I am

compelled to say, are unlike the one at bar. According to my understanding of these cases, the innkeeper is clearly liable; but the chief-justice maintains that none of those cases fixes or limits the extent of the liability. I think they all fix the liability to any amount the traveller may have with him in the inn. It is a well-established principle, that in the amount charged for the keep and board of the traveller, the innkeeper receives the consideration for the safe keeping of his guest, his goods, and his money (2 *Kent's Com.*, 7 ed., 758; Lane *a.* Cotton, 12 *Mod.*, 483, 487; The Berkshire Woollen Co. *a.* Proctor, 7 *Cushing*, 417; Mason *a.* Thompson, 9 *Pick.*, 280; Bennett *a.* Mellor, 5 *Term R.*, 273); and this principle runs through all the cases to the present time.

The common law fixes an implied contract between the innkeeper and his guest. The innkeeper is to entertain and keep safely the guest, his money, and his goods. The traveller, in consideration thereof, is bound to pay the price demanded for such entertainment, and the safe-keeping of himself, his money, and goods; and the goods received at the inn are by law pledged to the innkeeper for the fulfilment of his part of the contract, and it cannot therefore be said there is no consideration passing from the traveller to his host for the risk or liability incurred by the innkeeper.

This has been an undisputed principle of law for hundreds of years past; and the question that now arises is, does the statute of 1855 change this principle? The act simply says, there is to be a safe in this inn, under the absolute, especial, and immediate control of the innkeeper, his agents, and servants, and unless the guest deposits his money in that safe, the innkeeper is not responsible; and the rule of law is clear, that if the guest does deposit his money in that safe, the innkeeper is certainly liable to protect him against the theft of himself or servants. Any other rule of law would place the traveller at the mercy of a dishonest innkeeper and his dishonest servants, without a remedy; and public policy calls for the inflexible enforcement of such a rule of law, although occasionally it may work harshly. It must be conceded, that before the law of 1855 was enacted, if a guest came to an inn, and took to his room $20,000, and the innkeeper's servants or agents broke in and robbed the guest, the innkeeper was held liable, and surely if

the law of 1855 compels the guest to place that money under the absolute and immediate control of the innkeeper and his dishonest servant, he is doubly responsible, because, if this trap of a safe had not been there, the traveller might have protected his money, in his room, with his own means of protection. The act, undoubtedly, was to relieve the innkeeper from responsibility, where the guest was robbed of his money or goods, while they were in the room. I therefore hold, that where the guest complies with the law of 1855, as in this case, the innkeeper should be held to a more strict accountability than he was before the law was passed. This being so, it is quite clear that the same principle that would make him liable for $10 would make him liable for $10,000. If this were not the rule, how absurd it would be to compel a traveller, under the act of 1855, to hand an innkeeper $20,000 for safe-keeping, and have the innkeeper say next morning, that he received that amount from him, put it in his safe, but it was lost through his negligence, and he could only give $1,000 instead of the $20,000. That is precisely this case.

The common law creates the contract between the traveller and his host. The statute of 1855 defines more clearly the duties of the parties; and if the guest neglects to comply with his part of the statute, by placing his money in the safe and it is stolen, it is his loss alone. But if the innkeeper assumes the risk, by taking the money in his safe-keeping, his liability to such guest is rendered positive and certain; and the consideration is the large sum demanded for the guest's keeping, together with the lien the innkeeper has on such money and goods until such keeping is paid.

It is contended for, in the opinion of the court, that it would be unjust for a traveller to bring in any amount of money or valuables to an inn, and, without notice, make the innkeeper liable. The simple answer to that proposition is this: That this is not a case of that kind. Here the innkeeper had the money placed in his safe-keeping, and had sufficient notice of the contents of the package—such a notice as satisfied him— and he thereupon entered into the obligation of taking care of the money for the consideration of the guest stopping at his inn; and the common law says, the defendant shall be responsible for the loss, especially if that loss takes place from the

negligence of servants of the defendant. If this rule was not the proper one, how easily an innkeeper could conspire with his servants and rob his guests ; whereas, the innkeeper at all times has a perfect security against his guests, by simply asking the guest what are the contents of the package, and if he finds it too large, by refusing to receive it. The guest, however, has no such safeguard against the dishonesty of innkeepers and their servants, if this old rule of common law is to be abolished.

As to the question of notice, I hold that it is not necessary at common law that the guest should notify the innkeeper of the amount of money. The question of negligence cannot come up, for the innkeeper is liable without reference to any degree of care or negligence on his part. Chancellor Kent holds that it is not necessary to prove negligence in an innkeeper—the innkeeper is liable as an insurer of the property and moneys of his guest, and this liability is founded on the principle of public utility, to which all private considerations ought to yield. (2 *Kent's Com.*, 7 ed., 760, and cases there cited.)

It is, therefore, at common law, unnecessary that the guest should notify the innkeeper of the particular amount of property or money left with him; and it is no argument against the innkeeper's liability to say, that if the guest had notified him of the particular amount of money he was leaving with him, in such a case the innkeeper would have exercised greater care, as the innkeeper is liable without reference to any degree of care or negligence on his part.

The statute of 1855 requires that a safe must be kept in which a guest may deposit his money. This increases public confidence and security to guests; and it must be presumed, therefore, that the Legislature intended that guests would be influenced by this increased confidence, and avail themselves of the additional security. It cannot be justly said, that $3 per day is not adequate to the risk, because if not adequate they must make the contract with the guest for a larger consideration ; and second, by analogy to the risk that insurance companies take, the very small premiums they receive, and the enormous losses they frequently sustain, it may be said that the consideration of $3 per day is large. But to return to the question of notice on the part of the guest. The learned

chief-justice, in his able opinion, denies the sufficiency of the notice given by the plaintiff to the defendants of the contents of the package, when it was intrusted to the defendant for deposit in his safe, and says, that " a notice, to be sufficient to release the plaintiff from the imputation of negligence, should be not only of the kind of property, but its value." When the package containing the money was handed to the defendant's agent at the office, to be deposited in the safe, the defendant, by his agent, asked the plaintiff " what it contained?" the plaintiff answered, "Money." This description and notice were then satisfactory to the defendant, and the package was so marked.

The description satisfied defendant then—he asked for no other, but with that description took charge of the "money." I think he should now be estopped from saying the notice was not sufficient; the contrary doctrine would lead to great frauds.

If the notice was insufficient, and was not a satisfactory compliance with the statute on the part of the plaintiff, and did "impute negligence to the plaintiff," then, I am unable to see on what theory the plaintiff could recover any thing at all. I am unable to see why the notice should be insufficient to allow the plaintiff to recover all the money received by the defendant on the notice, but sufficient to allow him to recover a part. If the notice was insufficient under the statute (and if the question of notice is in any way controlling), then the plaintiff should not have recovered any thing; but it being conceded that he should recover at least one thousand dollars and costs, I think from that concession alone it follows he should recover the whole of his loss. I am clear that the notice to the defendant, of the contents of the package intrusted to and received by him, was, under the circumstances of this case, sufficient.

It has been urged by the counsel for the defence, and a con-clusion to that effect has been drawn in the leading opinion of the court, that the cause is analogous to that of the common carrier. I do not entertain any such conclusion of the simi-larity.

Formerly, it was held that a carrier of passengers was not answerable for baggage at all, unless a distinct price was paid

for it. This never was the rule with innkeepers, and the reasoning, both of the statute and common law, by which the doctrine of the liability of innkeepers, without proof of fraud or negligence, is maintained, is, that travellers are obliged to rely almost entirely on the good faith of innkeepers; that it would be almost impossible for them, in any case, to make out any proof of fraud or negligence in the innkeepers; and that, therefore, the public good and the safety of our large travelling community require that innkeepers should be held entirely responsible for the safe-keeping of the goods of guests; and the same reasoning would hold them alike responsible for money. Another reason why common carriers are sometimes excused for the loss of large sums of money, when packed in trunks, and so lost, is, that it is not presumed that a traveller would carry large sums of money in trunks, with his clothing, but would rather be presumed to carry such large and valuable sums of money about his person, while travelling; which latter presumption ceases when the traveller arrives at an inn, where the law provides a place of safety for such money, and where the innkeeper is held liable for any loss arising through his neglect.

This much have I reasoned, and said why this defendant should be held responsible for the loss of the money. Now, let us examine the decisions from the time of the earliest cases to the present, on the subject.

One of the earliest decisions we find reported is that of Calye's case, tried in the Queen's Bench, during the reign of Elizabeth (8 *Coke*, 33), and there it is clearly enunciated as law, that the "innkeeper is responsible if the guest is robbed in his house;" and I find, on a careful examination of the English authorities, that such is held to be the invariable rule of law in the courts of that country to this day. In the case of Kent *a.* Shuckard (2 *Barn. & Adolph.*, 803, Lord TENTERDEN), it was held (all the other judges concurring), that innkeepers were liable for all moneys as well as goods of a guest; and that there was no distinction between money and goods. In the case of Coggs *a.* Barnard (1 *Smith's Lead. Cas.*, 309), it is expressly held that the innkeeper's liability is not restricted to such sums as are required for travelling expenses; and the same rule was held by HOLT, Ch. J., in the case of Lane *a.* Cotton (12 *Mod.*, 487), and

the very learned and able Judge Cowen, in the case of Cole a. Goodwin (19 *Wend.*, 251), hold a similar doctrine, so that it cannot be said that we are at sea as to the extent of the liability of innkeepers. Since these leading cases, both the English and American cases, adjudicated upon by the most learned of men, all fix the liability of the innkeeper to any sum of money the traveller may have within his possession, and intrust to the innkeeper in the manner before specified.

Indeed, in the case of Piper a. Manny (21 *Wend.*, 282), Chief-justice Nelson carried this doctrine so far as to hold that an innkeeper was liable for the safe-keeping of a load of goods belonging to a traveller who stopped at the inn, even though the servant of the inn designate an open space near the highway for the goods to be placed.

In the case of Towson a. Havre de Grace Bank (6 *Har. & Johns.*, 47, 63), after stating the position that if A. sends his money by his friend, who is robbed at the inn at which he is a guest, the court says A. shall have the right of action. Now, certainly, this money of a friend was not for travelling expenses, it was simply a part of the money and goods of the guest, whom the innkeeper had undertaken to entertain as his guest, and around whom the great common law of our land throws its ample protection against the frauds of innkeepers; and this safe doctrine is also promulgated in the case of Mason a. Thompson (9 *Pick.*, 280).

The case of Bennett a. Mellor, herein cited, is a case where a guest left a sleigh-load of wheat in an outer-house belonging to the inn. The wheat was stolen, and the innkeeper was held liable. Certainly the wheat was not travelling expenses! And the like rule was held in case of Hallenbake a. Fish (8 *Wend.*, 547). There the innkeeper was held responsible for the loss of a set of harness placed in a barn by the innkeeper's man ; and in the case of Jones a. Tyler (1 *Adolph. & Ellis*, 522), the innkeeper was held responsible for a gig that was placed in front of the inn on the common highway.

Mr. Justice Fletcher remarks that the principle contended for, that innkeepers are liable for such sums only as are necessary, and designed for travelling expenses by the guest, is unsupported by any authority whatever, and wholly inconsistent with the principle upon which the liability of innkeepers rests.

And the same rule was held good by Chief-justice Bronson, in the case of Grinnell a. Cook (3 Hill, 485), and reiterated in the case of McDonald a. Edgerton (5 Barb., 560) ; and see Bennett a. Mellor (5 Term R., 273). And this safe doctrine was reenunciated in the late case of Gile a. Libby (36 Barb., 70). In the case of the Woollen Co. a. Proctor (7 Cush., 417), where an agent of the company was robbed at the inn of a large amount of money belonging to the company, it was held that a recovery was not limited to travelling expenses ; and certainly the case at bar is a much stronger case in favor of the plaintiff than the one last cited, for there the agent was robbed by some outside party, of money not his own; but here the plaintiff was robbed of his own money, by one of the servants of the innkeeper. In North Carolina, too, in the case of Quinten a. Courtney (1 Hayw., 41), it appeared that a traveller alighting at an inn, and delivering his saddle-bags, containing a large amount of money, to a servant, did not inform the innkeeper that there was money in the bags ;—the money was stolen, and the tavern-keeper was held liable. See also the case of Dwight a. Brewster (1 Pick., 50), and Taylor a. Monnot (4 Duer [in this court], 116), where a similar doctrine is maintained. And Mr. Justice Story lays down as an elementary principle a doctrine that completely meets this case. He says (at chapter 6, section 481, p. 456, of his Commentaries): "So the innkeeper will be liable for the loss of the money of his guest, stolen from his room, as well as for his goods and chattels ; and this liability extends to all the movable goods and money of the guest, placed within the inn, and is not confined to such articles and sums only as are necessary and designed for ordinary travelling expenses of the guest."

But why enumerate cases? the doctrine is as old as our common law. Indeed, to hold a contrary rule, without authority or precedent, is to cast loose from the safe moorings of the old common law, rendered dear to us by the adjudications of the most learned of the bench, for centuries past, both in the old and new world ; and I am satisfied that a contrary doctrine would be very evil in its effects in this great commercial community of ours, where our business men necessarily spend a large portion of their time at inns, in the pursuit of their calling.

This much I have said on the clearly adjudicated cases. Now, let us see what the ablest elementary writers say on the subject, and for that purpose I shall only cite a few of the most eminent of English and American writers. Sir WILLIAM BLACKSTONE, from whom every willing student draws the true maxims of sound law, says (1 *Blackst. Com.*, 430): "If an inn-keeper's servant robs his guest, the master is bound to restitution ; for, as there is confidence reposed in him that he will provide honest servants, his negligence is an implied consent to the robbery." This elementary principle completely covers the case under consideration.

Our great commentator, Chancellor KENT, in speaking of the liability of innkeepers, lays down this clear and undisputed principle : that the innkeeper is bound absolutely to keep safe the property of his guest deposited within the inn, whether the guest acquaints the innkeeper that the goods were there or not. Moreover, he says the responsibility of the innkeeper extends to all his servants, and to all goods and chattels, and all moneys of the guest placed within the inn ; and he adds, that the safe custody of the goods and money of the guest is a part of the contract to feed and lodge for a suitable reward, and that it is not necessary to prove negligence in the innkeeper, for, says he, "it is his duty to provide honest servants." What can be plainer than this, and what can be more in consonance with common sense, as well as clear common law ? and I am satisfied this doctrine will put to violence the theories that there is no consideration for the extra risk entered into by the innkeeper for keeping the money ; that the consideration is the charge of the innkeepor for the entertaining and caring for his guest.

To the lawyer and scholar, the names of Sir WILLIAM BLACK-STONE and Sir WILLIAM JONES on the one side of the ocean, and Chancellor KENT and Justice STORY on this, will be sufficient for my purposes in this case until some author or some case is cited, showing clearly that a contrary doctrine should obtain. It must follow, therefore, and I am satisfied from all my research, that the rule of law, to wit, that the innkeeper is responsible for all moneys deposited with him, is the correct and standard rule.

This is not the first instance this vague question of travelling

expenses has b·en interposed by innkeepers and urged by their counsel, in order to avoid their responsibility; but it has always been repelled, and it will be seen that, in many of the cases I have cited, the question has been treated and disposed of by a flat denial of such a dangerous doctrine.

The rights of parties, and such important rights as these under consideration, affecting, as they do, in their results, our whole travelling community, must be determined by sound law, handed down to us by the most eminent men, and not by any vague, undetermined, and partial, local usage, or any *dicta*. A strict adherence to this principle is particularly essential, in this day, to a sound and consistent administration of justice; and a departure from such a course works great injustice—for no man could know what were his rights or his duties, unless they are clearly defined by the precedents of the earlier times, declared by those great living lights and champions of just and wholesome law.

The judgment should be affirmed, with costs.